IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LEIKA JOANNA GARCÍA-GESUALDO<br><br>Plaintiff<br><br>v.<br><br>HONEYWELL AEROSPACE OF PUERTO RICO, INC.; and HONEYWELL INTERNATIONAL, INC.;<br><br>Defendants | CIVIL NO. _____<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>Employment Discrimination, Retaliation and Sexual Harassment; Wrongful Termination; Civil Rights Violations; Damages |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Leika Joanna García-Gesualdo ("Ms. García-Gesualdo" or "Plaintiff"), by her attorney, complains of Defendants Honeywell Aerospace of Puerto Rico, Inc. ("Honeywell Aerospace"), and Honeywell International, Inc. ("Honeywell International" and together with Honeywell Aerospace, "Defendants" or "Honeywell") as follows:

### Introduction

1.      This is a complaint ("Complaint") for employment discrimination on the basis of sex, race, national origin and disability, sexual harassment, retaliation, wrongful termination, breach of implied contract and promissory estoppel, intentional infliction of emotional distress and civil rights violations pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); Puerto Rico's Anti-Discrimination Act, P.R. Stat. 100-1959, 29 P.R.L.A. §

- 1 -

146 *et seq.* ("P.R. Law 100"); Puerto Rico's Right to Equal Employment Act, P.R. Stat. 69-1985, 29 P.R.L.A. § 1321 *et seq.* ("P.R. Law 69"); Puerto Rico's Sexual Harassment in Employment Prohibition Act, P.R. Stat. 17-1988, 29 P.R.L.A. § 155 *et seq.* ("P.R. Law 17"); Puerto Rico's People with Disabilities Anti-Discrimination Act, P.R. Stat. 44-1985, 29 L.P.R.A. § 501 *et seq.* ("P.R. Law 44"); Puerto Rico's Anti-Retaliation in Employment Act, P.R. Stat. 115-1991, 29 L.P.R.A. § 194 *et seq.* ("P.R. Law 115"); and Puerto Rico's Wrongful Termination Act, P.R. Stat. 80-1976, 29 L.P.R.A. § 185a *et seq.* ("P.R. Law 80").

2.      Plaintiff also seeks compensatory and punitive damages pursuant to a Common Law action in tort, and compensatory damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code of 1930 (repealed 2020), 31 L.P.R.A. §§ 5141-5142.

3.      Ms. García-Gesualdo was employed by Honeywell from June 2007 to July 2020. During her time at Honeywell, Ms. García-Gesualdo, non-White Hispanic, Puerto Rican woman, endured an unrelenting pattern of incremental harassment, discrimination and retaliatory actions that constituted a continuous hostile environment from early in her employment and until her employment was terminated effective July 24, 2020.

4.      Ms. García-Gesualdo was often praised by her peers and subordinates for her professionalism, supporting nature and outstanding work. Yet, she was not treated equally as her male counterparts, materially or otherwise, by Honeywell, and she was sexually harassed and demeaned because of her sex. There were several instances of remarks and conduct toward Ms. García-Gesualdo and other women that were insulting, humiliating, hostile and discriminatory on the basis of sex. Honeywell allowed or, at least, tolerated this hostile work environment of sexual discrimination. Additionally, her direct

supervisor made discriminatory remarks and jokes about a Black employee in Ms. García-Gesualdo's presence.

5. When Ms. García-Gesualdo reported the aforementioned discriminatory conduct, Honeywell retaliated and further discriminated against her by denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a Puerto Rican woman.

## Venue and Jurisdiction

6. This Court has jurisdiction of this civil action under 28 U.S.C. § 1331 for it involves claims arising under Title VII, Section 1981, and ADA. An express grant of federal court jurisdiction over these federal claims is found under Title VII at 42 U.S.C. § 2000e-5(f)(3), under Section 1981 at 42 U.S.C. § 1981, and under ADA at 42 U.S.C. § 12117 (a). Equitable and other relief are also sought under 42 U.S.C. § 2000e-5(g).

7. This Court also has jurisdiction of this civil action under 28 U.S.C. § 1343.

8. This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is appropriate under 28 U.S.C. § 1391.

## The Parties

10.     Plaintiff is an adult citizen who resides in this Court's district ("District") and is a resident of Puerto Rico domiciled in the municipality of Mayagüez. At all times relevant to the Complaint, Ms. García-Gesualdo was an "employee" as defined in the statutes invoked herein. Ms. García-Gesualdo worked for Honeywell, first, in Mayagüez and, then, in Aguadilla, Puerto Rico, from June 2007 to July 24, 2020, at which date Honeywell terminated her employment. At all times relevant to the Complaint, Ms. García-Gesualdo was an "employee" as defined in the statutes invoked herein.

11.     Defendant Honeywell International is a multinational corporation with headquarters in Charlotte, North Carolina. Honeywell International is registered in the State of Delaware and is authorized to conduct business in Puerto Rico. Honeywell International operates from various sites in the District. At all times relevant to the Complaint, Honeywell International was an "employer" as defined in the statutes invoked herein.

12.     Defendant Honeywell Aerospace is a subsidiary or affiliate of Defendant Honeywell International. Honeywell Aerospace is registered in the Commonwealth of Puerto Rico. Honeywell Aerospace operates from various sites in the District. At all times relevant to the Complaint, Honeywell Aerospace was an "employer" as defined in the statutes invoked herein.

## Procedural Background

13.     Ms. García-Gesualdo exhausted her administrative remedies at the United States Equal Employment Opportunity Commission ("EEOC").

14. Ms. García-Gesualdo filed a charge of sex, age, race, color, national origin and disability discrimination and retaliation against Honeywell with the EEOC in May 10, 2021 ("Charge").

15. The EEOC made no determination as to the merits of any of the claims made by Ms. García-Gesualdo in the Charge or whether there was reasonable cause to believe Honeywell violated Title VII, ADA or ADEA occurred.

16. The EEOC issued Ms. García-Gesualdo a Notice of Right to Sue, which Ms. García-Gesualdo received on April 11, 2022. A true and correct copy of that notification is attached as **Exhibit A.**

17. This Complaint is being filed within ninety (90) days of Ms. García-Gesualdo's receipt of the EEOC Notice of Right to Sue.

**Allegations of Fact**

18. Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

19. Honeywell International hired Ms. García-Gesualdo on June 4, 2007, as a Sourcing Manager assigned to Honeywell Aerospace's Integrated Supply Chain Global Sourcing Hub ("the Hub").

20. The Hub was established in Mayagüez, Puerto Rico as a pilot program for the centralization of manufacturing support services for Honeywell International's aerospace division and plants in the United States and elsewhere.

21. The Hub eventually relocated to Aguadilla, Puerto Rico, in or around 2009.

22.     Both Honeywell International and Honeywell Aerospace (together, "Honeywell") had control over Ms. García-Gesualdo's hiring and eventual firing, and were involved in training Ms. García-Gesualdo, assigning work, supervising her, issuing her paychecks, covering her insurance and other benefits, and controlling other means of her employment (such as providing the equipment necessary for her position, including a desk, a chair, a computer and monitors, a printer and office space).

23.     As the first and only Sourcing Manager assigned to Puerto Rico from 2007 until about 2011, Ms. García-Gesualdo was tasked with organizing, developing, managing and leading supply chain sourcing for Honeywell at the Hub.

24.     During that time, the direct supervisor assigned to Ms. García-Gesualdo changed on several occasions. Ms. García-Gesualdo's position reported first to Vice President of OEM Procurement Sheri Henck ("VP Henck"), and then to Sourcing Director Dean Seng, Sourcing Director Marc Menden, and Senior Sourcing Director Oswaldo Gutierrez in that order, all of whom were off-location.

25.     The performance assessments conducted on Ms. García-Gesualdo by her supervisors during her first four years of employment were at or exceeded Honeywell's standards in terms of meeting targets, delivering results and demonstrating expected behavior. In particular, she exceeded in fostering teamwork and diversity, was commended for getting Puerto Rico's sourcing unit up and running and managing her team of forty plus employees reporting directly to her. Furthermore, Ms. García-Gesualdo was deemed a hard and diligent worker with a strong desire to succeed and "technical excellence skills supporting a large organization".

26.     Despite Ms. García-Gesualdo's positive performance assessments, her male counterparts in Puerto Rico earned higher salaries, and had fewer responsibilities and fewer employees under their direct supervision, during those first four years of employment, a situation that continued throughout her employment at Honeywell. Ms. García-Gesualdo found these situations demeaning and, as a result, she felt hurt, sad and unvalued.

27.     Furthermore, Ms. García-Gesualdo witnessed several instances of discriminatory conduct toward other Honeywell employees during that time. For example, a few weeks after starting her job at Honeywell, Dean Fitch—a White, male, Procurement Manager in Honeywell's manufacturing plant in Glendale Arizona—called Ms. García-Gesualdo over the phone and asked her to fire Emybel Calero—a female, Puerto Rican employee at the Hub under Ms. García-Gesualdo's direct supervision—because he did not like how Ms. Calero spoke English and to find him a person that "*at least*" spoke English like Ms. García-Gesualdo.

28.     Ms. García-Gesualdo believed in good faith that Mr. Fitch's request had a discriminatory animus and brought it to the attention of Ricardo Mercado, Human Resources Manager at the Hub (hereinafter, "HR Manager Mercado"). Ms. García-Gesualdo told HR Manager Mercado that Ms. Calero was fluent in English, that her Puerto Rican accent was not a legitimate reason to terminate her employment at Honeywell and that Mr. Fitch's request could potentially be discriminatory on the basis of race or national origin. Although HR Manager Mercado agreed with Ms. García-Gesualdo that Ms. Calero ought not to be terminated because of her accent, he dismissed Ms. García-Gesualdo's

concerns regarding possible discrimination on the basis of race or national origin toward Puerto Rican employees at the Hub. HR Manager Mercado also dismissed other reports of discriminatory conduct by Ms. García-Gesualdo prior to and after Mr. Fitch's incident.

29. Ms. García-Gesualdo found these episodes of discrimination on the basis of race and national origin offensive and hurtful, and felt ignored by HR Manager Mercado's dismissals of her complaints of workplace discrimination.

*HR Manager Mercado retaliates against Ms. García-Gesualdo*

30. After Ms. García-Gesualdo reported several instances of discriminatory conduct at Honeywell, HR Manager Mercado refused to provide Ms. García-Gesualdo support and guidance in matters involving human resources. The lack of support and guidance was beginning to impact Ms. García-Gesualdo's sourcing team's performance and cause discontent and internal conflicts among the employees under her supervision. Ms. García-Gesualdo feared she would be penalized for the situation. Therefore, Ms. García-Gesualdo asked Mr. Mario Coracides, Integrated Supply Chain Director for the Hub (hereinafter, "Hub Director Coracides"), the person responsible for overseeing Honeywell's operations in Puerto Rico at that time, to meet with her to discuss HR Manager Mercado's lack of support, his role and responsibilities at the Hub, and the absence of human resources policies and procedures for the Puerto Rico site.

31. Hub Director Coracides met with Ms. García-Gesualdo and HR Manager Mercado on October 3, 2007. During this meeting, HR Manager Mercado became irritated, angry and verbally violent for no apparent reason, and told Ms. García-Gesualdo,

*"**Don't fuck with me because I will do anything I need**

**and gather all the info that I need to fuck you up**."*

In a later communication, Hub Director Coracides acknowledged that HR Manager Mercado had become irritated by Ms. García-Gesualdo's feedback and that he told her *"Don't fuck with me."*

33.     During the meeting, Ms. García-Gesualdo informed Hub Director Coracides that she felt threatened by HR Manager Mercado and that his conduct toward her could have negative repercussions for her employment at Honeywell. Rather than addressing her concerns, Hub Director Coracides warned Ms. García-Gesualdo: *"focus on your results rather than how [HR Manager Mercado] can or cannot influence your results."*

33.     As feared by Ms. García-Gesualdo, HR Manager Mercado's hostility and lack of support towards her that stemmed from her reports of possible employment discrimination had a tangible impact on Honeywell's assessment of her performance. For example, in one of Ms. García-Gesualdo's performance assessments, VP Henck mentioned that Ms. García-Gesualdo had had *"a few non-productive incidents with HR in PR that needed 3rd party intervention"* and implied said incidents were a result of Ms. García-Gesualdo's frustration with a lack of *"standard work or rules/regulations"* rather than HR Manager Mercado's hostile, retaliatory conduct.

> *Ms. García-Gesualdo is required to work during two maternity leaves*
> *and denied proper accommodations and breaks to extract breastmilk*

34.     In or about October 2007, Ms. García-Gesualdo visited the Hub's Human Resources Department ("HR Department") to inform Honeywell that she was pregnant and asked for guidance on maternity leave benefits for Honeywell employees in Puerto

Rico. HR Manager Mercado told Ms. García-Gesualdo that maternity leave benefits had to be requested as short-term disability ("STD") benefits through MetLife, a third-party provider of employee benefits. HR Manager Mercado provided no further guidance to Ms. García-Gesualdo.

35.     On February 14, 2008, Ms. García-Gesualdo met with Ms. Peggy Abreu, a Human Resources Generalist at the Hub ("HR Generalist Abreu") under the supervision of HR Manager Mercado, to follow up on her request for guidance on maternity leave benefits for Honeywell employees in Puerto Rico. During this meeting, Ms. García-Gesualdo requested Honeywell's policy regarding maternity leave for employees in Puerto Rico in writing. HR Generalist Abreu confirmed that maternity leave benefits had to be processed through MetLife. She was not given a written policy on maternity leave. Upon insisting on written information regarding maternity leave, HR Generalist Abreu sent Ms. García-Gesualdo an email with portions of Puerto Rico's Working Mothers Protection Act of 1942, P.R. Law 3-1942, in February 25, 2008, stating "*this is what I have*" and asking her to visit a website address link that was not provided in the email. Ms. García-Gesualdo was offered no further guidance.

36.     Ms. García-Gesualdo gave birth to her first child on May 9, 2008. She went on maternity leave on that date, which was provided as short-term disability leave. Due to post-partum complications, Ms. García-Gesualdo did not come back from her leave until August 4, 2008.

37.     While on maternity leave, Ms. García-Gesualdo was continually contacted via email and obliged to work remotely for Honeywell and, on one occasion, Ms. García-

Gesualdo was required to work on site but was told by HR Manager Mercado that she could not be in her office with her newborn. He proceeded to instruct Ms. García-Gesualdo to leave her newborn with him, in his office, while she worked at her desk. Ms. García-Gesualdo perceived that she had no choice in this matter and proceeded as instructed despite feeling extremely concerned about the well-being of her child.

38.     Ms. García-Gesualdo did not receive full payment of her maternity leave benefits for her leave from May 9 to August 4, 2008, until sometime in November of that year.

39.     After returning to work from maternity, Honeywell did not provide appropriate facilities nor sufficient time for Ms. García-Gesualdo to extract breastmilk. For example, the breastfeeding facilities were dirty, with cobwebs, and not appropriately prepared for breastmilk extraction. Further, the room was often used by other employees, which prevented Ms. García-Gesualdo from extracting her breastmilk at regular intervals. This situation prevented Ms. García-Gesualdo from fully extracting her breastmilk, which resulted in a bout of mastitis in March 2009 that put Ms. García-Gesualdo out of work for several days. Upon diagnosing Ms. García-Gesualdo with mastitis, her doctor indicated she must be allowed to extract breastmilk during work hours to avoid another bout of mastitis.

40.     Ms. García-Gesualdo gave birth to her second child on December 27, 2009. She went on maternity leave on that date.

41.     Before going on her second maternity leave, Ms. García-Gesualdo wrote an email to HR Generalist Abreu on November 24, 2009, in which Ms. García-Gesualdo

relayed that Olga Pérez, an on-site nurse at the Hub ("Nurse Pérez"), had explained to her that a maternity leave is different from an STD leave. Ms. García-Gesualdo further indicated her leave should be provided as a maternity leave, not as an STD leave. HR Generalist Abreu agreed, an admission that Ms. García-Gesualdo's first maternity leave was incorrectly handled as an STD leave.

42.     While on her second maternity leave, as during her first maternity leave, Ms. García-Gesualdo worked remotely for Honeywell. This negatively impacted her post-partum recovery, forcing her to seek medical attention, and she had to extend her leave for a total of twelve weeks until March 2010.

43.     After returning to work from her second maternity leave, Honeywell did not provide, once again, appropriate facilities nor sufficient time for Ms. García-Gesualdo to extract breastmilk.

44.     The lack of an appropriate room or station for breastmilk extraction at the Hub obliged Ms. García-Gesualdo to resort to extracting her breastmilk in her office to avoid a second bout of mastitis. Ms. García-Gesualdo had to extract her breastmilk in plain view of other employees because her office's front wall at the Hub was made of glass and mostly transparent. To have privacy and avoid embarrassment, Ms. García-Gesualdo had to extract her breastmilk under a blanket.

45.     On one occasion, while Ms. García-Gesualdo was extracting breastmilk in her office, Nurse Pérez admonished her. Nurse Pérez told Ms. García-Gesualdo, in front of other employees, that she could not extract breastmilk in her office, even if under a blanket, and threatened to report Ms. García-Gesualdo, presumably to her supervisor or

the HR Department. Nurse Pérez's admonishment and threat provoked great embarrassment and fear of losing her job in Ms. García-Gesualdo.

46.    Ms. García-Gesualdo gave birth to her third and last child on June 28, 2012. She went on maternity leave on that date.

47.    Upon returning from maternity leave after her third pregnancy, Honeywell did not provide, once again, appropriate facilities nor sufficient time for Ms. García-Gesualdo to extract breastmilk.

*Senior Sourcing Director León discriminates*
*on the basis of sex and race*

48.    Around August 2011, Mr. Oscar León, Senior Sourcing Director at Honeywell ("Senior Sourcing Director León"), became Ms. García-Gesualdo's direct supervisor. By then, Ms. García-Gesualdo worked as the only Senior Sourcing Manager at the Hub.

49.    Senior Sourcing Director León was Ms. García-Gesualdo's direct supervisor from August 2011 to about May 2013. During that time, Senior Sourcing Director León had several Sourcing Managers and Procurement Managers under his direct supervision. Ms. García-Gesualdo was the only woman and Senior Sourcing Manager under Senior Sourcing Director León's supervision during the time she reported to him.

50.    Since his arrival to Honeywell and until about May 2013, Senior Sourcing Director León mistreated Ms. García-Gesualdo and devalued her work. Senior Sourcing Director León made demeaning comments toward Ms. García-Gesualdo because of her sex, commented on Ms. García-Gesualdo's and other female workers' appearance, treated Ms. García-Gesualdo with hostility, micromanaged and overly scrutinized her work, scolded and reprimanded Ms. García-Gesualdo in front of her peers and subordinates,

credited male employees for work performed by Ms. García-Gesualdo, did not consider her for promotions, and repeatedly characterized her email responses as "aggressive" and asked her to "soften" her behavior because women should be "delicate and soft" while encouraging male employees to be "aggressive" by saying "eso trigre" ("there you go tiger", in English) and encouraging them to speak up and ask "hard questions". For example, in or about October 2011, Senior Sourcing Director León screamed at Ms. García-Gesualdo and blamed her for work that was not properly carried out by a male peer in front of her subordinates.

51.    Senior Sourcing Director León's disparate, hostile and humiliating conduct was directed at Ms. García-Gesualdo and other women, but not at male employees.

52.    Furthermore, while he served as Ms. García-Gesualdo's direct supervisor, Senior Sourcing Director León drastically reduced Ms. García-Gesualdo's responsibilities by assigning her work and team members to other managers and eventually demoted her from Senior Sourcing Manager to Procurement Manager just so she would have the same title and position as her male peers, despite having earned the promotion months before.

53.    Senior Sourcing Director León's disparate, humiliating and hostile conduct towards Ms. García-Gesualdo made her feel useless, inadequate, incapable, and as a failure, and, as a result, she spoke and participated less and less in group meetings. On or about November 28, 2011, Senior Sourcing Director León asked Ms. García-Gesualdo why she had become quiet during meetings. Ms. García-Gesualdo responded that it was due to his treatment toward her, to which Senior Sourcing Director León replied

"**everyone is free to choose where to work**."

54. Later that day, Senior Sourcing Director León sent an email to his whole team—all male employees except for Ms. García-Gesualdo—stating:

> *From: Leon, Oscar*
>
> *Monday, November 28, 2011 9:58 AM*
>
> *To: Martinez, William; Garcia Gesualdo, Leika; Maldonado, Hector (mx60); Monroy, Roberto; Viaud, Aurelien; Galindo, Leonardo; Rivera, Roberto; Camasta, Amin E*
>
> *Subject: I do not want you to think that I am encouraging you to change your rolls, just in case…read this article*
>
> *Buut, in case one day you become bored one of your current jobs….., and you want to start a business like these ones below.*
>
> *http://www.cnnexpancion.com/negocios/2011/11/25/modelo-de-partes-del-cuerpo*
>
> *Oscar Leon Chong*
>
> *Sr.Sourcing Director*
> *Honeywell Aerospace / Strategic Sourcing*
>
> *…*

The hyperlink in the email directed the reader to an article about body parts modelling and, particularly, "***butts in jeans*" modelling**. The article thus shared by Senior Sourcing Director León was an evident reference to his earlier conversation with Ms. García-Gesualdo and a not-so-subtle comment on her physique.

55. During his time as Ms. García-Gesualdo's supervisor, Senior Sourcing Director León made racist comments against at least one Black Honeywell employee. Senior Sourcing Director León referred to his supervisor, an African American male, as a

"**monkey**", asked Ms. García-Gesualdo to bring him "**a basket of bananas**" and report back how many he had eaten, and often said that his supervisor had "**black humor, no pun intended**."

56.     Ms. García-Gesualdo verbally complained of Senior Sourcing Director León's conduct to Human Resources personnel at the Hub several times, but nothing came of it. Therefore, on March 1, 2013, Ms. García-Gesualdo reported verbally and in writing to Christopher Torres, Human Resources Manager at the Hub (HR Manager Torres), and in writing to Honeywell's Integrity Help Line Senior Sourcing Director León's conduct toward her and other women as sexual harassment and discrimination on the basis of sex and toward his supervisor as racist, among other acts she deemed discriminatory and unprofessional.

57.     The investigation into Ms. García-Gesualdo's allegations against Senior Sourcing Director León took more than a month to culminate. Once allegedly finished, HR Manager Torres informed Ms. García-Gesualdo that Honeywell did not find any discrimination on the part of Senior Sourcing Director León and assured her that no retaliation would come her way because of the complaint.

58.     As a result of the sexually and racially hostile environment created by Senior Sourcing Director León and Honeywell's dismissal of her harassment and discrimination complaint, Ms. García-Gesualdo felt trapped, ignored and in despair. Therefore, she applied for several positions in Honeywell outside Senior Sourcing Director León's workgroup from April through August 2013. Despite HR Manager Torres assurances to Ms. García-Gesualdo that Honeywell would not retaliate as a result of her complaint,

Honeywell did not offer Ms. García-Gesualdo any of the positions that she applied to during that period. Further, her above-average job performance was overlooked by Senior Sourcing Director León and other superiors while her male peers were recognized and rewarded for similar performance.

*Business Process Director Patel discriminates*
*on the basis of sex*

59.     Frustrated with the retaliatory actions against her in Honeywell Aerospace, Ms. García-Gesualdo applied and landed a position, working remotely from Puerto Rico, as Procurement Processes Senior Manager in Honeywell International's Corporate Division in December 2013, first, under the supervision of Business Process Director Brian Kendrick and, later, under Business Process Director Cindy Hernández ("Process Director Hernández"), both located outside Puerto Rico.

60.     Process Director Hernández resigned her position at Honeywell in or about June 2016. Ms. García-Gesualdo assumed Process Director Hernández's responsibilities upon her resignation.

61.     Mr. Sapin Patel ("Process Director Patel") was named as Process Director Hernández's successor about a month later.

62.     Ms. García-Gesualdo was not considered for the Business Process Director position although she was qualified and was considered a "top performer" at Honeywell.

63.     Process Director Patel was Ms. García-Gesualdo's direct supervisor from July 2016 to January 2018.

64.     When Process Director Patel took on his new position, he remarked to Ms. García-Gesualdo that she must be upset because she did not get the position and told

Ms. García-Gesualdo that he did not have experience with procurement and would need her help to do his job.

65.     Upon learning that she had been passed over for a promotion once again and that, unlike her, Process Director Patel had no prior experience in procurement, Ms. García-Gesualdo feelings of humiliation and worthlessness were exacerbated.

66.     Additionally, after assuming the position as Process Director, Process Director Patel made derogatory comments against female employees at Honeywell. For instance, he would often comment that women were slow and incapable of doing data analysis.

67.     On one occasion, in the fall of 2016, Process Director Patel told Ms. García-Gesualdo over the phone:

> "***You have to push women until they break or leave like Prathana [a female employee at a Honeywell hub in India] did.***"

68.     Process Director Patel's humiliating and demeaning treatment toward her and women in general dismayed Ms. García-Gesualdo. Indeed, Ms. García-Gesualdo often felt that Process Director Patel wanted to break her like he had done to Ms. Prathana.

69.     Like Senior Sourcing Director León, Process Director Patel mistreated Ms. García-Gesualdo and devalued her work. Process Director Patel made demeaning comments toward women, treated Ms. García-Gesualdo with hostility, micromanaged and overly scrutinized her work, scolded and reprimanded Ms. García-Gesualdo in front of her peers and subordinates, and credited male employees for work performed by Ms. García-Gesualdo. Moreover, Process Director Patel drastically reduced Ms. García-Gesualdo's

responsibilities by assigning her work and team members to himself and other managers, and surreptitiously, without informing her, changed her job classification from Senior Procurement Manager to "Ldr Transaction Process Exc".

70.     Ms. García-Gesualdo complained about Process Director Patel's humiliating, demeaning and disparate treatment to the HR Department and Ms. Leslie Ivanchan, Vice President of Corporate Procurement.

71.     Ms. García-Gesualdo's reduction of responsibilities and surreptitious change of classification was designed and carried out by Process Director Patel to eventually eliminate the new position and fire Ms. García-Gesualdo, which he did in January 2018.

72.     On January 16, 2018, Process Director Patel and Human Resources Manager Rey Rivera ("HR Manager Rivera") informed Ms. García-Gesualdo, over the telephone, that Honeywell had made "a business decision" to eliminate her new position as "Ldr Transaction Process Exc" and that she would be terminated effective in 30 days. During that telephone conversation, Ms. García-Gesualdo asked HR Manager Rivera for support in finding another position at Honeywell, in Puerto Rico or elsewhere. HR Manager Rivera answered,

> "***You will receive no support from HR to find another internal position***."

73.     After learning about her imminent dismissal, Ms. García-Gesualdo became anxious and fell into a major depression for which she sought treatment with Dr. Vanessa Pagán, a clinical psychiatrist ("Psychiatrist Pagán"). Ms. García-Gesualdo experienced a depressed mood, excessive worries with periods of feeling on edge and her mind going blank, death wished, feelings of worthlessness, loss of energy, insomnia, and markedly

diminished interest in activities, ability to make decisions, and concentrate. She received pharmacotherapy and individual psychotherapy to treat her depression and anxiety.

74. Despite the onset of depression and anxiety, Ms. García-Gesualdo submitted job applications to over 100 job openings at Honeywell during the next month because she feared losing her income as the sole breadwinner at home.

75. Despite all the job openings for which Ms. García-Gesualdo was qualified and applied, Honeywell only offered her a lower ranked and paid position as Senior Buyer at Honeywell Aerospace in Puerto Rico, earning approximately $45,000.00 less than she had in her position as Procurement Processes Senior Manager during the last four years.

76. To the best of her recollection, Ms. García-Gesualdo never received a written notification of her layoff, but HR Manager Rivera invited Ms. García-Gesualdo, through a calendar application, to attend an "Offboarding Process Meeting" on February 23, 2018.

77. At the Offboarding Process Meeting, HR Manager Rivera asked Ms. García-Gesualdo why she had not accepted the lower-paid "Buyer" position if she had "una familia que mantener" ("a family to feed") and "algo es major que nada" ("something is better than nothing"). Ms. García-Gesualdo told HR Manager Rivera that the announced termination as well as the lower job position Honeywell wanted her to take in lieu of termination were retaliation for her prior complaints about discrimination and sexual harassment. She asked HR Manager Rivera to give her the termination paperwork to sign and leave because she had already emptied her office, and that she would see Honeywell wherever she must to resolve the matter, clearly alluding to potential litigation.

78.     Unexpectedly, after approximately 20 minutes, HR Manager Rivera told Ms. García-Gesualdo that he had been notified that Honeywell had a different job opportunity for her and offered her old title as Senior Sourcing Manager at Honeywell Aerospace. Ms. García-Gesualdo begrudgingly accepted the offer. It is Ms. García-Gesualdo's believe that Honeywell's last-minute higher-paid job offer was designed to avoid a lawsuit for employment discrimination and retaliation.

*Honeywell's denies Ms. García-Gesualdo a promotion*
*and continues to retaliate against her*

79.     In or about February 2018, Ms. García-Gesualdo returned to work as Senior Sourcing Manager at Honeywell Aerospace under the supervision of Mr. Sy Price, Senior Procurement Director, ("Procurement Director Price") at the Hub in Aguadilla.

80.     By March 2018, Ms. García-Gesualdo was being praised by Mr. Toby Price, Vice-President of Strategic Sourcing at Honeywell International and Procurement Director Price's supervisor, ("VP Price"; no known relation to Procurement Director Price) for her "great work" and how "quickly [she] had jumped in to make a difference".

81.     Procurement Director Price resigned from his position in April 2018. It is Ms. García-Gesualdo's understanding that he resigned due to the stressful and hostile work environment at the Hub.

82.     In or about April 2018, Mr. Hal Rathvon, also Procurement Director at the Hub ("Procurement Director Rathvon"), moved to another position in Sourcing due to the stressful and hostile work environment at the Hub.

83.     Procurement Director Price and Procurement Director Rathvon were both White, male employees, located in the United States.

84.     Immediately after Procurement Director Price's resignation and Procurement Director Rathvon's transfer, VP Price called Ms. García-Gesualdo over the telephone and told her that, on top of her own responsibilities as Senior Sourcing Manager, he would assign Procurement Director Price's and Procurement Director Rathvon's responsibilities at the Hub to her, including the supervision of their staff, since Ms. García-Gesualdo had prior experience in sourcing and in supervising employees at the Hub. Given that both Procurement Director positions were open, and that VP Price had recognized Ms. García-Gesualdo was doing "great work" and had the experience and capability to carry out the responsibilities assigned, Ms. García-Gesualdo asked VP Price for either of the Procurement Director positions open. VP Price denied Ms. García-Gesualdo's request telling her he had "a different plan".

85.     In an email dated, May 18, 2018, VP Price once again praised Ms. García-Gesualdo: "*I see great things in your future based in all I hear and have seen*." Yet, by May 2018, VP Price had offered one of the Procurement Director positions to a male employee in the United States, Mr. Justin Whitlow (hereinafter, "Sourcing Director Whitlow"). The other position was filled shortly thereafter.

86.     Despite VP Price's continuing praise of Ms. García-Gesualdo's work, he offered the remaining position to another male peer, Mr. Daniel Montgomery (hereinafter, "Sourcing Director Montgomery"), once more denying Ms. García-Gesualdo a promotion despite her qualifications and above-average work performance.

87.     Despite the new recruitments, Ms. García-Gesualdo continued to carry out tasks that were previously assigned to the Procurement Directors on top of her own job

responsibilities as Senior Sourcing Manager. As a result, Ms. García-Gesualdo was and felt overworked.

88.     The lack of material recognition of her work in the form of a promotion and a higher salary and the excessive workload and work-related stress put upon Ms. García-Gesualdo by Honeywell, while promoting White, male peers to positions she was undeniably qualified and capable to perform, made Ms. García-Gesualdo feel disheartened, unvalued, and exploited, and exacerbated her continuing depression and anxiety.

*Honeywell effectively denies Ms. García-Gesualdo
a reasonable accommodation*

89.     By July 2018, Psychiatrist Pagán had determined that Ms. García-Gesualdo's depression had turned chronic and recommended a short-term disability leave from work because the exacerbated symptoms of depression affected her ability to work. These conditions substantially limited several of Ms. García-Gesualdo's life activities such as memory, paying attention, processing information, maintaining her wellbeing and moods, and household chores.

90.     As recommended by Psychiatrist Pagán, Ms. García-Gesualdo took a short-term disability leave from her employment at Honeywell.

91.     During her leave, Honeywell failed to process Ms. García-Gesualdo's disability benefits with Cigna, a third-party provider of employee benefits and, as a result, she had no income for several months.

92. The stress of receiving no income as a result of Honeywell's inaction worsened Ms. García-Gesualdo's symptoms during her leave to the point she had to be admitted to psychiatrist partial hospitalization on November 6, 2018.

93. Ms. García-Gesualdo was on short-term disability until August 2019 and returned to her position at Honeywell on that month.

94. In June 2019, prior to returning to work from her short-term disability, Ms. García-Gesualdo met with Ms. Madeline Soto, Senior Human Resources Generalist at the Hub ("HR Generalist Soto"). Ms. García-Gesualdo informed HR Generalist Soto that she had had partial response to her psychiatric treatment and her conditions had improved and, therefore, she was interested in returning to work at Honeywell. She also informed the HR Department that she was working with Psychiatrist Pagán on a return-to-work transition plan and requested guidance on the procedure to request a reasonable accommodation so that she would be able to return to her position. Ms. García-Gesualdo was told that she needed to have her psychiatrist submit her medical recommendations for reasonable accommodation in writing.

95. As instructed by HR Generalist Soto, in July 2019 Ms. García-Gesualdo submitted her psychiatrist's recommendations in writing. By then, Ms. García-Gesualdo had moderate difficulty in making independent decisions, interacting with other people, controlling and planning tasks, maintaining appropriate control of emotions and performing some of her daily activities, such as household chores. According to Psychiatrist Pagán's assessment of Ms. García-Gesualdo, her condition was chronic and recurrent and could impact "her capacity to do things quickly and efficiently, her ability

to develop strategies, to plan, to execute and to deal with multiple projects." Psychiatrist Pagán estimated the duration of Ms. García-Gesualdo's impairment at 9 to 12 months, with an expected need for reasonable accommodation of 6 to 9 months of "50% reduction of her work duties and 2-3 days a week working off site".

96.     On August 14, 2019, Ms. García-Gesualdo returned to work at the Hub.

97.     On August 26, 2019, HR Generalist Soto informed Ms. García-Gesualdo over email that her reasonable accommodation request had been approved effective on that date, for a period of six months, with a workload reduction and two days working remotely from home. HR Generalist Soto's email to Ms. García-Gesualdo unambiguously stated that Sourcing Director Montgomery, Ms. García-Gesualdo's direct supervisor, "would be assigning [Ms. García-Gesualdo] a temporary reduced work load [sic] to assist [her] with [her] return to work transition." HR Generalist Soto would later claim that Ms. García-Gesualdo's accommodation had been approved in September 2019. The accommodation was later extended for a total of nine months.

98.     Even though Ms. García-Gesualdo's accommodation request was approved, and that Sourcing Director Montgomery was tasked with assigning her a reduced workload, upon reporting to work, Sourcing Director Montgomery told Ms. García-Gesualdo that he would not provide her the reasonable accommodation requested because there was too much work in his group and that his recommendation was to:

> "***find another job ... that can approve your request for accommodation.***"

Astonished by Sourcing Director Montgomery's response, Ms. García-Gesualdo went to talk to HR Generalist Soto and informed her what Sourcing Director Montgomery had told her, upon which HR Generalist Soto remarked that Sourcing Director Montgomery could not deny her reasonable accommodation request.

99.    Upon learning that he had to accommodate Ms. García-Gesualdo and over the next month and half, Sourcing Director Montgomery refused to give Ms. García-Gesualdo any work. During that time, Ms. García-Gesualdo continually asked Sourcing Director Montgomery for work assignments, but her requests fell on deaf ears. As a result, Ms. García-Gesualdo felt confused, stressed, anxious, she was being punished for requesting a reasonable accommodation. Further, she feared that Sourcing Director Montgomery's indifference toward her would exacerbate her psychiatric symptoms and prolong her recovery.

100.    In or about October 2019, Sourcing Director Montgomery finally assigns Ms. García-Gesualdo new work responsibilities. The workloads assigned required Ms. García-Gesualdo to work about 9-hour per day, five days a week, and some weekends, in violation of her approved reasonable accommodation request.

101.    Ms. García-Gesualdo complained about Sourcing Director Montgomery's violation of her approved reasonable accommodation request, but Honeywell did not take any corrective measures.

*Sourcing Director McDavid discriminates and retaliates
on the basis of sex, national origin and disability*

102.    On October 31, 2019, Mr. Greg McDavid ("Sourcing Director McDavid") replaced Sourcing Director Montgomery as Ms. García-Gesualdo's direct supervisor.

Instead of reducing Ms. García-Gesualdo's workload to fulfill her reasonable accommodation needs, Sourcing Director McDavid increased Ms. García-Gesualdo's workload over time.

103.   In or about November 2019, Ms. García-Gesualdo complained about Sourcing Director McDavid's violation of her reasonable accommodation, as she had done before regarding Sourcing Director Montgomery's effective denial of her reasonable accommodation request, but Honeywell did not take any corrective measures.

104.   Before Ms. García-Gesualdo complained about Sourcing Director McDavid's violation of her approved reasonable accommodation request, Sourcing Director McDavid treated her in a professional, courteous and supportive manner.

105.   After Ms. García-Gesualdo complained about Sourcing Director McDavid's violation of her reasonable accommodation, Sourcing Director McDavid began to mistreat Ms. García-Gesualdo: he would assign her tasks nobody else wanted to perform; he would interrupt her mid-sentence and not let her speak during meetings (by saying, for example, "not now", "that's not what I asked", "I don't want to hear it") while letting her male peers speak freely; he would ask her to meet at unreasonable times (nights or weekends); he would talk to her in a hostile manner; and he would tell her she did not know how to perform her work. Some of this conduct was only directed at Ms. García-Gesualdo and, on occasions, at Ms. Kim Kwon, another non-White subordinate of Sourcing Director McDavid. Ms. García-Gesualdo never witnessed Sourcing Director McDavid treating her male peers in the same manner.

106. On July 13, 2020, Ms. García-Gesualdo submitted a second reasonable accommodation request because her first request was not fulfilled and Psychiatrist Pagán recommended continued temporary reasonable accommodations to allow Ms. García-Gesualdo to transition from a partially off-site, reduced workload to an on-site, full workload.

107. On July 16, 2020, HR Generalist Soto communicated to Ms. García-Gesualdo over email that Honeywell had investigated her complaints about denial of reasonable accommodation. HR Generalist Soto informed Ms. García-Gesualdo that the investigation concluded that her reasonable accommodation request "was fulfilled/honored". HR Generalist Soto also indicated in her communication to Ms. García-Gesualdo that her second reasonable accommodation was reviewed and denied because, in HR Generalist Soto's words: "performing your full workload is an essential function of your job and [Honeywell] cannot grant a reduced workload as a permanent accommodation." HR Generalist Soto also informed Ms. García-Gesualdo that Honeywell had investigated her "concerns about being treated differently" with "no findings".

108. The conclusions and findings of the purported investigation are incorrect. Ms. García-Gesualdo had not requested a "permanent" work reduction either in July 2019, July 2020 or at any other time. Her first reasonable accommodation request was never honored. And, contrary to the conclusions and findings of the purported investigation, Ms. García-Gesualdo endured an unrelenting pattern of incremental harassment, discrimination and retaliatory actions at Honeywell that constituted a continuous hostile environment from early in her employment

*Honeywell fires Ms. García-Gesualdo in retaliation*

109.   Ms. García-Gesualdo went on a planned and approved vacation leave from July 20 to July 25, 2020.

110.   While Ms. García-Gesualdo was on vacation, Sourcing Director McDavid held a mandatory videoconference meeting on July 20, 2020.

111.   Despite being on vacation leave, Ms. García-Gesualdo connected to and attended the videoconference meeting. During the meeting, Sourcing Director McDavid announced that there would be a furlough and reduction in pay at Honeywell, that the Sourcing, Procurement and Fulfillment groups would not be impacted because the employees in those groups are essential and critical to the company. Ms. García-Gesualdo worked for the Sourcing group.

112.   Despite the assurances, on July 23, 2020, Sourcing Director McDavid met individually with Ms. García-Gesualdo, while she was still on vacation leave, and informed Ms. García-Gesualdo that her position had been terminated effective July 24, 2020.

113.   Honeywell fired Ms. García-Gesualdo while she was on a planned and approved vacation leave, eight days after HR Generalist Soto incorrectly informed her that her original reasonable accommodation request had been "fulfilled/honored", that there were no findings as to her discrimination complaint and that her second reasonable accommodation request had been denied because she had requested a permanent reduction in workload, which was untrue.

**COUNT 1**
**Title VII—Discrimination and Retaliation on the Basis of Sex**

114. Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

115. Ms. García-Gesualdo is a member of a protected class on the basis of sex; she is a woman.

116. Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

117. Honeywell discriminated against Ms. García-Gesualdo as described above, including but not limited to paying her less than her male peers for equal work, sexually harassing her, subjecting her to a hostile work environment, denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a woman.

118. Honeywell also retaliated against Ms. García-Gesualdo as described above.

119. The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-

Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

120.   Honeywell's actions were taken with malice, reckless indifference and/or a willful and wanton disregard of Ms. García-Gesualdo's rights under Title VII.

121.   As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

122.   The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

**COUNT 2**
**P.R. Law 100—Discrimination and Retaliation on the Basis of Sex**

123.   Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

124.   Ms. García-Gesualdo is a member of a protected class on the basis of sex; she is a woman.

125.   Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

126.   Honeywell discriminated against Ms. García-Gesualdo as described above, including but not limited to paying her less than her male peers for equal work, sexually harassing her, subjecting her to a hostile work environment, denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a woman.

127.   Honeywell also retaliated against Ms. García-Gesualdo as described above.

128.   The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

129.   Honeywell's actions were taken with a willful and wanton disregard of Ms. García-Gesualdo's rights under P.R. Law 100.

130.   As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered

humiliation, degradation, emotional distress, other consequential damages, and lost wages.

131.   The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

## COUNT 3
### P.R. Law 69—Discrimination and Retaliation on the basis of Sex

132.   Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

133.   Ms. García-Gesualdo is a member of a protected class on the basis of sex; she is a woman.

134.   Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

135.   Honeywell discriminated against Ms. García-Gesualdo as described above, including but not limited to paying her less than her male peers for equal work, sexually harassing her, subjecting her to a hostile work environment, denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of

disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a woman.

136.    Honeywell also retaliated against Ms. García-Gesualdo as described above.

137.    The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

138.    Honeywell's actions were taken with a willful and wanton disregard of Ms. García-Gesualdo's rights under P.R. Law 69.

139.    As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

140.    The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

## COUNT 4
## P.R. Law 17—Sexual Harassment and Retaliation

141.    Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

142.    Ms. García-Gesualdo is a member of a protected class on the basis of sex; she is a woman.

143.    Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

144.    Ms. García-Gesualdo was subjected to hostile work environment of sexual harassment by several of her direct supervisors who discriminated against Ms. García-Gesualdo on the basis of sex as described above, including but not limited to unequal, demeaning and humiliating treatment toward her because of her sex, which interfered with her work performance and created and offensive work environment.

145.    Honeywell also retaliated against Ms. García-Gesualdo as described above.

146.    The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

147.    Honeywell's actions were taken with a willful and wanton disregard of Ms. García-Gesualdo's rights under P.R. Law 69.

148.    As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered

humiliation, degradation, emotional distress, other consequential damages, and lost wages.

149. The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

**COUNT 5**
**Title VII—Discrimination and Retaliation on the Basis of Race**

150. Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

151. Ms. García-Gesualdo is a member of a protected class on the basis of race; she is Latina or Hispanic.

152. Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

153. Honeywell discriminated against Ms. García-Gesualdo as described above, including but not limited to subjecting her to a hostile work environment, denying her advancement opportunities; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms.

García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a Latina or Hispanic woman.

154.    Honeywell also retaliated against Ms. García-Gesualdo as described above.

155.    The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

156.    Honeywell's actions were taken with malice, reckless indifference and/or a willful and wanton disregard of Ms. García-Gesualdo's rights under Title VII.

157.    As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

158.    The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

**COUNT 6**
**Section 1981—Discrimination and Retaliation on the Basis of Race**

159. Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

160. Ms. García-Gesualdo is a member of a protected class on the basis of race; she is Latina or Hispanic.

161. Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

162. Honeywell intentionally discriminated against Ms. García-Gesualdo as described above, including but not limited to sexually harassing her, subjecting her to a hostile work environment, denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a Latina or Hispanic woman.

163. Honeywell would not have carried out these acts, including Ms. García-Gesualdo's employment termination, were it not for her race: Latina/Hispanic.

164. Honeywell also retaliated against Ms. García-Gesualdo as described above.

165. The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory

actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

166. Honeywell's actions were intentional and/or taken with malice, reckless indifference and/or a willful and wanton disregard of Ms. García-Gesualdo's rights under Section 1981.

167. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

168. The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

169. Ms. García-Gesualdo would have not been harmed but for her race.

**COUNT 7**
**P.R. Law 100—Discrimination Discrimination and Retaliation**
**on the Basis of Race**

170. Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

171. Ms. García-Gesualdo is a member of a protected class on the basis of race; she is Latina or Hispanic.

172. Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

173. Honeywell discriminated against Ms. García-Gesualdo as described above, including but not limited to subjecting her to a hostile work environment, denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a Latina or Hispanic woman.

174. Honeywell also retaliated against Ms. García-Gesualdo as described above.

175. The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

176. Honeywell's actions were taken with a willful and wanton disregard of Ms. García-Gesualdo's rights under P.R. Law 100.

177.    As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

178.    The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

## COUNT 8
## Title VII—Discrimination and Retaliation on the Basis of National Origin

179.    Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

180.    Ms. García-Gesualdo is a member of a protected class on the basis of national origin; she is a native of Puerto Rico.

181.    Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

182.    Honeywell discriminated against Ms. García-Gesualdo as described above, including but not limited to subjecting her to a hostile work environment, denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive

workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a Puerto Rican woman.

183. Honeywell also retaliated against Ms. García-Gesualdo as described above.

184. The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

185. Honeywell's actions were taken with malice, reckless indifference and/or a willful and wanton disregard of Ms. García-Gesualdo's rights under Title VII.

186. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

187. The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of

professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

**COUNT 9**
**P.R. Law 100—Discrimination on the Basis of National Origin**

188.   Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

189.   Ms. García-Gesualdo is a member of a protected class on the basis of national origin; she is a native of Puerto Rico.

190.   Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

191.   Honeywell discriminated against Ms. García-Gesualdo as described above, including but not limited to subjecting her to a hostile work environment, denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a Puerto Rican woman.

192.   Honeywell also retaliated against Ms. García-Gesualdo as described above.

193.   The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory

actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

194.    Honeywell's actions were taken with a willful and wanton disregard of Ms. García-Gesualdo's rights under P.R. Law 100.

195.    As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

196.    The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

**COUNT 10**
**ADA—Discrimination and Retaliation on the Basis of Disability**

197.    Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

198.    Ms. García-Gesualdo developed a disability, consistent of a major depressive and anxiety disorder, as a result of Honeywell's acts and omissions as described herein.

199.    Ms. García-Gesualdo was at all times relevant to this count, and continues to be, an individual with a disability within the meaning of 42 USC § 12102 (2), in that

(A) she had and continues to have a mental impairment that substantially limited and continues to limit one or more major life activities; (B) she has a record of such an impairment; and/or (C) she was regarded by Defendants as having such an impairment.

200.  Ms. García-Gesualdo was, at all times relevant to this count, and continues to be, a qualified individual with a disability as that term is defined 42 USC § 12111 (8).

201.  Ms. García-Gesualdo chronic depression and anxiety disorder is a mental impairment that substantially limited one or more major life activities at all times relevant to this count and continues to do so.

202.  Honeywell was aware of Ms. García-Gesualdo's impairment.

203.  Honeywell regarded Ms. García-Gesualdo chronic depression and anxiety disorder as a mental impairment that substantially limited one or more major life activities.

204.  Honeywell discriminated against Ms. García-Gesualdo as described above, including but not limited to subjecting her to a hostile work environment, denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a woman with a mental disability.

205. Honeywell effectively denied Ms. García-Gesualdo's request for reasonable accommodation by failing to reduce her workload as recommended by her psychiatrist.

206. Honeywell discriminated against Ms. García-Gesualdo based upon her disability by effectively refusing Plaintiff's accommodation request.

207. Honeywell also retaliated against Ms. García-Gesualdo as described above.

208. The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

209. Ms. García-Gesualdo was capable of performing the essential functions of her job at Honeywell with reasonable accommodation.

210. Ms. García-Gesualdo's disability, and/or record of a disability, and/or perceived disability was a factor that made a difference in Defendants' decision to harass, treat unequally and then terminate her employment.

211. Honeywell's actions were taken with malice, reckless indifference and/or a willful and wanton disregard of Ms. García-Gesualdo's rights under ADA.

212. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

213.    The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

**COUNT 11**
**P.R. Law 44—Discrimination and Retaliation on the Basis of Disability**

214.    Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

215.    Ms. García-Gesualdo developed a disability, consistent of a major depressive and anxiety disorder, as a result of Honeywell's acts and omissions as described herein.

216.    Ms. García-Gesualdo was at all times relevant to this count, and continues to be, an individual with a disability within the meaning of P.R. Law 44, in that (A) she had and continues to have a mental impairment that substantially limited and continues to limit one or more major life activities; (B) she has a record of such an impairment; and/or (C) she was regarded by Defendants as having such an impairment.

217.    Ms. García-Gesualdo was, at all times relevant to this count, and continues to be, a qualified individual with a disability as that term is defined in P.R. Law 44.

218.    Ms. García-Gesualdo chronic depression and anxiety disorder is a mental impairment that substantially limited one or more major life activities at all times relevant to this count and continues to do so.

219.    Honeywell was aware of Ms. García-Gesualdo's impairment.

220.    Honeywell regarded Ms. García-Gesualdo chronic depression and anxiety disorder as a mental impairment that substantially limited one or more major life activities.

221.    Honeywell discriminated against Ms. García-Gesualdo as described above, including but not limited to subjecting her to a hostile work environment, denying her advancement opportunities that were later offered to male employees; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good. In the meantime, Ms. García-Gesualdo's superiors continued to treat her disparately and in a hostile and demeaning manner toward her and her intellectual and work-related capacities as a woman with a mental disability.

222.    Honeywell effectively denied Ms. García-Gesualdo's request for reasonable accommodation by failing to reduce her workload as recommended by her psychiatrist.

223.    Honeywell discriminated against Ms. García-Gesualdo based upon her disability by effectively refusing Plaintiff's accommodation request.

224.    Honeywell also retaliated against Ms. García-Gesualdo as described above.

225.    The incremental, unrelenting and repetitive nature of these acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-

Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

226.　Ms. García-Gesualdo was capable of performing the essential functions of her job at Honeywell with reasonable accommodation.

227.　Ms. García-Gesualdo's disability, and/or record of a disability, and/or perceived disability was a factor that made a difference in Defendants' decision to harass, treat unequally and then terminate her employment.

228.　Honeywell's actions were taken with malice, reckless indifference and/or a willful and wanton disregard of Ms. García-Gesualdo's rights under P.R. Law 44.

229.　As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

230.　The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

**COUNT 12**
**P.R. Law 115—Retaliation for Incurring in Protected Activity**

231.　Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

232.   Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

233.   Ms. García-Gesualdo incurred in a protected activity as defined in P.R. Law 115 when she complained to her superiors and Honeywell's HR Department about acts of discrimination and sexual harassment at work.

234.   Honeywell subsequently took adverse actions and retaliated against Ms. García-Gesualdo as described above, including but not limited to subjecting her to a hostile work environment, denying her advancement opportunities; denying her proper maternity leave and breastfeeding accommodations; effectively denying her reasonable accommodation upon her return from disability leave; assigning excessive workloads; imposing unreasonable deadlines; over-scrutinizing her work; levelling vailed threats of disciplinary action; gaslighting her; firing her and then retracting; and, ultimately, firing her for good.

235.   Honeywell's actions were taken with a willful and wanton disregard of Ms. García-Gesualdo's rights under P.R. Law 115.

236.   As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

237.   The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental

anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

## COUNT 13
## P.R. Law 80—Wrongful Termination of Employment

238.	Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

239.	Ms. García-Gesualdo, in all respects, was performing her job in a manner that was consistent with Honeywell's legitimate business expectations.

240.	Defendants are, separately and jointly, a commerce, industry, business or workplace as defined in P.R. Law 80.

241.	Ms. García-Gesualdo was hired to work for Defendants for an indefinite period of time, and indeed worked for Defendants, by and through an employment contract.

242.	Ms. García-Gesualdo received a salary and fringe benefits for her work at Honeywell.

243.	Ms. García-Gesualdo worked in excess of 40 hours per week.

244.	Ms. García-Gesualdo worked over 13 years for Honeywell without an interruption of her employment status.

245.	Honeywell's decision to terminate Ms. García-Gesualdo's employment was capricious.

246.   Honeywell's decision to terminate Ms. García-Gesualdo's employment was not consistent with Honeywell's legitimate interests in the good and normal operation of its business.

247.   Honeywell's decision to terminate Ms. García-Gesualdo's employment was not based on her job performance or conduct, or triggered by repeated violations of workplace policies.

248.   Honeywell's decision to terminate Ms. García-Gesualdo's employment was not the result of a complete, partial or temporary shutdown of operations, due to changes in technology or business reorganization, or a reduction of production, sales or profits.

249.   Honeywell's decision to terminate Ms. García-Gesualdo's employment was without "just cause" as that term is defined in P.R. Law 80.

**COUNT 14**
**Wrongful Termination of Employment in Violation of Public Policy**

250.   Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

251.   Defendants, by and through their employees, officers and/or agents, conspired to deny and, in fact, denied Plaintiff's employment rights as guaranteed by common law, by terminating Plaintiff's employment as described above on the basis of her sex, race, national origin and disability in violation of important public policies as stated in the U.S. Const. and its 14th Amendment; Art. II, § 1, of the P.R. Const.; Title VII; Section 1981; ADA; P.R. Law 100; P.R. Law 69; P.R. Law 17; and P.R. Law 44.

252. Defendants' conduct in contravention of said public policies gives rise to a common law action in tort, and under Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 5141-5142.

253. The incremental, unrelenting and repetitive nature of Defendants' conduct constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

254. As a direct and proximate result of Defendants' wrongful acts and omissions, including Ms. García-Gesualdo's wrongful termination of employment, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

255. The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

### COUNT 15
### Breach of Implied Contract and Promissory Estoppel

256. Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

257. Defendants, by and through their employees, officers and/or agents, conspired to deny and, in fact, denied Plaintiffs' employment rights as guaranteed by

common law implied contract, by terminating Plaintiff's employment at Honeywell and otherwise discriminating and retaliating against her, as described above, on the basis of her sex, race, national origin and disability in violation of important public policies as stated in the U.S. Const. and its 14th Amendment; Art. II, § 1, of the P.R. Const.; Title VII; Section 1981; ADA; P.R. Law 100; P.R. Law 69; P.R. Law 17; and P.R. Law 44.

258.    Defendants' conduct in contravention of said public policies gives rise to a common law action in tort, and under Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 5141-5142.

259.    The incremental, unrelenting and repetitive nature of Defendants' conduct constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

260.    Defendants are promissorily estopped from denying the existence of an implied contract as they made employment promises to Plaintiff upon which she reasonably relied to her detriment when Defendants discriminated, retaliated and wrongfully terminated her employment.

261.    As a direct and proximate result of Defendants' wrongful acts and omissions, including Ms. García-Gesualdo's wrongful termination of employment, Ms. García-Gesualdo has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

262.    The injuries and damages sustained by Ms. García-Gesualdo include, but are not limited to, loss of earnings and earning capacity; loss of income (past, present

and future); loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

## COUNT 16
### Intentional Infliction of Emotional Distress

263.   Ms. García-Gesualdo realleges the foregoing paragraphs and incorporates them in this section of the Complaint as though fully set forth herein.

264.   Defendants, by and through their employees, officers and/or agents, conspired to deny and, in fact, denied Plaintiff's employment rights by discriminating, retaliating and terminating Plaintiff's employment, as described above, on the basis of on the basis of her sex, race, national origin and disability.

265.   These intentional and invidious acts and omissions inflicted severe emotional distress upon Ms. García-Gesualdo, causing her depression, humiliation and loss of daily enjoyment of life.

266.   The incremental, unrelenting and repetitive nature of Defendants' acts and omissions constituted a continuous pattern of harassment, discrimination and retaliatory actions that created and maintained a hostile environment from early in Ms. García-Gesualdo's employment and until her employment was terminated on or around July 24, 2020.

267.   As a direct and proximate result of Defendants' intentional and invidious conduct, Plaintiffs have sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of income (past, present and future); loss of career

opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

## Prayer for Relief

WHEREFORE, Plaintiff prays that this Court:

A.      Enter judgment in favor of Ms. García-Gesualdo and against the Defendants for violation of Ms. García-Gesualdo's Rights under Title VII, Section 1981, ADA, P.R. Law 100, P.R. Law 69, P.R. Law 17, P.R. Law 44, P.R. Law 80 and P.R. Law 115;

B.      Declare that Defendants' actions constituted unlawful discrimination and/or unlawful retaliation;

C.      Declare that Ms. García-Gesualdo suffered damages as a direct and proximate result of Defendants' acts and omissions;

D.      Declare that Ms. García-Gesualdo's termination was wrongful and/or without just cause;

E.      Award Ms. García-Gesualdo compensatory damages, including, but not limited to, lost wages and benefits (both front and back pay), in such amount as will reasonably compensate her for her losses, and damages for emotional distress, but in an amount no less than $5,000,000.00.

F.      Award Ms. García-Gesualdo punitive damages in such amount as the Court deems proper, but no less than any minimum provided in the statutes invoked herein;

G.      Award Ms. García-Gesualdo a discharge indemnity as provided by P.R. Law 80 in an amount no less than $111,000.00;

H.      Award Ms. García-Gesualdo her costs, attorneys' fees, and non-taxable expenses in this action;

I.      Award Ms. García-Gesualdo pre-judgment interests;

J.      Grant Ms. García-Gesualdo an affirmative injunction mandating that Plaintiff be reinstated to employment with Defendants, including restoration of Plaintiff's former salary, duties and responsibilities, and that no further harassment, discrimination, or retaliation be perpetrated upon her; and

K.      Grant Ms. García-Gesualdo such other and further relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff Leika Joanna García-Gesualdo hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: July 7, 2022.                          Respectfully submitted,

**ORTIZ MENDOZA & FARINACCI FERNÓS, LLC**
Edificio Banco Cooperativo Plaza
623 Avenida Ponce de León, Suite 701-B
San Juan, Puerto Rico 00917-4805
Tel.: 787-963-0404

*s/ Rafael A. Ortiz Mendoza*
**Rafael A. Ortiz Mendoza**
USDC-PR 229103
rafael.ortiz.mendoza@gmail.com